FILED - CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT** 04 JAN 16 PM 4: 04
**FOR THE EASTERN DISTRICT OF TEXAS** TX EASTERN-BEAUMONT
**BEAUMONT DIVISION**

BY_____ 7C

| | | |
|---|---|---|
| **MEREDITH TRENT CREEKMORE** | § | |
| | § | |
| v. | § | |
| | § | |
| **ATTORNEY GENERAL OF TEXAS,** | § | |
| **SHERIFF OF JEFFERSON COUNTY,** | § | **NO. 1:00-CV-264** |
| **CHIEF OF POLICE OF THE CITY OF** | § | |
| **BEAUMONT, and THOMAS A.** | § | |
| **DAVIS, in his official capacity as the** | § | |
| **Director of the Texas Department of** | § | |
| **Public Safety** | § | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This lawsuit challenges the constitutionality of the Texas Sex Offender Registration Program, Chapter 62, Texas Code of Criminal Procedure (SORP). Plaintiff Meredith Trent Creekmore ("Creekmore") contends that SORP is unconstitutional as it has been applied against him. He also contends that SORP is invalid on its face with respect to its treatment of people subjected to SORP's burdens and liabilities on account of certain convictions under the Uniform Code of Military Justice, ("UCMJ"). Although Creekmore attacks SORP on broad grounds, the practical effect of this attack is fairly narrow given the limited number of people to whom a ruling in this cause could apply.

### II. SUPPORTING EVIDENCE

This case was filed in April of 2000. Since then, this Court has rendered two opinions in this cause, *Creekmore v. Attorney General*, 116 F.Supp. 2d 767 (E.D. Tex. 2000), and 138

F.Supp.2d 795 (E.D. Tex. 2001), vacated and remanded, 34 Fed. Ap. 151 (5th Cir. 2002).  These opinions contain factual findings which are adopted herein by reference.  Further, each of the defendants (except for Defendant Sheriff of Jefferson County) filed motions for summary judgment which pleaded facts supported by attached exhibits.  Creekmore likewise adopts the factual pleadings and exhibits from those motions, which are incorporated herein by reference. Finally, Creekmore's Response to the Defendants' summary judgment motions was accompanied by his own affidavit and exhibits to that affidavit, which are likewise incorporated herein by reference.

### III.  THE FACTS

The facts in this case are simple, uncontested.  Creekmore was convicted in a court martial in 1996, for violating Article 134 of the Uniform Code of Military Justice (UCMJ) after he pled guilty to a Charge of Indecent Assault, with one specification, and to a Charge of Indecent Acts with a Child, with four Specifications.  The two Charges were brought in one General Court Martial, before one military judge, in one case and at the same time.  Creekmore received and served one sentence.  After he served that sentence, the Bureau of Prisons released Creekmore into Texas in December of 1999.

In 1997, the year following Creekmore's conviction, the Texas Legislature amended SORP to extend the definition of a "reportable conviction or adjudication" to include any conviction under the UCMJ "for an offense containing elements that are substantially similar to the elements of" one of the Texas Penal Code offenses which require registration under SORP. TEX. PENAL Code § 62.01(5)(J).

Soon after Creekmore was released by the Bureau of Prisons, the Jefferson County Sheriff's Office sent him a letter dated January 24, 2000, which stated, "According to the United

2

States Bureau of Federal Prisons you have been convicted of several sexual offenses which makes your registration a mandatory requirement every ninety-(90) days for the rest of your life." This letter affirmatively establishes that as of January 24, 2000, an administrative decision had already been made to classify Creekmore as: (1) a sex offender for purposes of SORP; (2) as a sex offender who had been convicted of a sexually violent offense which, pursuant to § 62.06, is the only possible basis for requiring Creekmore to comply with SORP's registration requirements "for the rest of [his] life"; and (3) a sex offender who has been convicted of two or more sexually violent offenses which, pursuant to §62.12, is the only possible basis for requiring Creekmore to comply with SORP's registration requirements "every ninety-(90) days." This administrative decision, to classify Creekmore as a sex offender convicted of multiple sexually violent offenses, was made on an ex parte basis without any prior hearing at which Creekmore could have contested the accuracy of this classification.

Because Creekmore has been classified as a person with a reportable conviction, and as a person who has been convicted two or more times of a violent sexual offense, he is now required, every ninety days for the rest of his life, to make in-person visits to a local law enforcement office to register as a sex offender, and to provide a wide variety of information and evidence, including but not limited to, his fingerprints, his shoe size, a recent picture, his social security number, and much, much more. He is also required to make additional in-person reports upon the occurrence of certain events, such as when he makes two-day visits to an area three or more times in a month. Creekmore faces severe criminal sanctions should he fail to meet these registration requirements.

After Creekmore registered as a sex offender, he was identified on the web-site maintained by the Texas Department of Public Safety as a sex offender who is required to

3

register every ninety days. After Creekmore registered as a sex offender, a local newspaper published his name more than once in a list entitled "Sex Offenders Living In Jefferson County." After Creekmore registered as a sex offender, he was also subjected to the approbation of his neighbors, as exhibited by a large, bright yellow poster affixed to a telephone pole near his home which warned his neighbors against him.

## IV.  ARGUMENT

### A.  Inaccuracy Of Classification

#### 1.  Inaccurate To Classify Creekmore as a 'sex offender with a reportable conviction.'

There are only three ways in which a person may properly be classified as a 'sex offender' for purposes of SORP:  by being convicted of particular offenses under the Texas Penal Code; by being convicted by a foreign jurisdiction of an offense the elements of which are substantially similar to certain Penal Code offenses; and by being required by a foreign jurisdiction to register as a sex offender, regardless of whether or not a conviction for the underlying offense would otherwise constitute a Reportable Conviction under Texas law.  §§ 62.01(5) and 62.021 of the Texas Code of Criminal Procedure.

Creekmore has never been convicted of any sexual offenses under the Texas Penal Code. The issue of whether Creekmore must comply with SORP's registration provisions therefore depends upon whether his UCMJ conviction was for offenses the elements of which are substantially similar to certain Penal Code offenses, and whether Creekmore is required to register as a sex offender under federal law or the Uniform Code of Military Justice.

4

The determination that Creekmore must register as a sex offender under SORP is partially based upon the contention that the offenses for which Creekmore was convicted under the UCMJ ( "Indecent Assault" and "Indecent Acts With A Child") have elements which are substantially similar to the elements of offenses proscribed by §§ 22.011 ('Sexual Assault') and 21.11 ('Indecency With A Child') of the Texas Penal Code.  The Defendants further contend that Creekmore is required by federal law or by the UCMJ to register as a sex offender.  These two contentions, however, are misplaced.

The UCMJ offenses of 'Indecent Assault' and 'Indecent Acts with A Child' criminalize conduct which is not criminalized by §§ 22.011 and 21.11 of the Texas Penal Code.  As has already been argued in Part III(A) of the Plaintiff's Response To The Defendants' Motions For Summary Judgment, §§ 22.011 and 21.11 contain additional elements which are not required to sustain a conviction for the UCMJ offenses of Indecent Assault and Indecent Acts With A Child.  It is therefore possible to be convicted of these UCMJ offenses for conduct which simply could not support convictions under §§ 22.011 and 21.11.

For example, where a conviction under § 22.011(a) of the Texas Penal Code for sexual assault requires a showing of some actual physical contact with certain parts of the victims body, a conviction under the UCMJ for Indecent Assault can be supported without a showing of any physical contact whatsoever, let alone any physical contact with those parts of the victim's body which are specifically enumerated by § 22.011(a).  *United States v. McDaniel*, 39 MJ 173 (1994, CMA) (conviction for indecent assault upheld where a naked serviceman surreptitiously crept into his naked victim's house, reached for the victim without actually touching her, and then fled without ever touching her).

5

Similarly, a conviction under § 21.11 of the Texas Penal Code for Indecency With A Child requires a showing that the wrongdoer either physically touched certain enumerated parts of the victims body, or else that those particular parts of his body or of the victims body were exposed. In contrast, a serviceman can be convicted under the UCMJ for Indecent Acts With A Child without any showing of the type of touching or exposure which is specifically prohibited by § 21.11. It is, in fact, possible for a serviceman to be convicted of Indecent Acts With A Child merely for kissing an underage girl on the mouth for sexual gratification, *United States v. Tindoll*, 16 USCMA 194, 36 CMR 350 (1966). Such conduct, by itself, could never support a conviction under § 21.11 of the Texas Penal Code.

SORP's definition of "Reportable conviction or adjudication" sets out the test for determining whether Creekmore's UCMJ convictions are reportable constitute trigger SORP's registration and notification requirements is set out in TEX. CODE CRIM. PROC. § 62.01(5)(J). Under that statutory definition, Creekmore's conviction under the UCMJ will be a 'reportable conviction' if that conviction was "for an offense containing elements that are substantially similar to..." Texas offenses that require registration. *Id.* Under this statutory test, only the elements of the UCMJ offense, and not the underlying facts of the UCMJ conviction, are relevant to the issue of whether Creekmore's conviction is a reportable conviction which triggers SORP's registration and notification provisions. SORP provides no authority whatsoever considering any of the underlying facts in making that determination.

There is a formal categorical approach for analyzing the comparability of similar offenses which requires an evaluation only of the elements of the offenses and not of the underlying facts. *Taylor v. United States*, 495 U.S. 575, 589-590 (1990). The application of this formal categorical approach to determine whether Creekmore's UCMJ convictions are 'Reportable

6

Convictions" is strongly supported by the fact that SORP does not expressly authorize any review of the underlying facts of a foreign conviction, but instead expressly mandates the comparison of the elements of the offense for which the foreign conviction was rendered.

Under the formal categorical approach, which looks solely at the elements of the offense and not at the underlying facts, it is clear that Creekmore's UCMJ conviction is not a Reportable Conviction because his UCMJ offenses criminalize conduct which is not criminalized by §§ 22.011 and 21.11, and because the UCMJ offenses contain different elements than §§ 22.011 and 21.11. It is therefore inaccurate to classify Creekmore as a sex offender with a Reportable Conviction on the basis of any alleged substantial similarity of the elements of his UCMJ offenses.

It is also inaccurate to classify Creekmore as a sex offender with a Reportable Conviction on the alleged basis that federal law or the UCMJ require him to register as a sex offender. There is no federal law nor any provision of the UCMJ which, *in haec verba*, *Dardeau v. West Orange-Grove CISD*, 43 F. Supp.2d 722, 732 (E.D. Tex. 1999). While such statutes exist which impose various duties upon the States and others (e.g. 10 U.S.C. § 951 imposes certain reporting duties upon the Secretary of Defense) it is factually and legally inaccurate to claim any federal law or UCMJ provision requires Creekmore to register as a sex offender.

2. Inaccurate To Classify Creekmore as a 'person convicted of a sexually violent offense.'

SORP characterizes certain Texas Penal Offenses, such as Sexual Assault under § 22.011, and Indeceny With A Child under § 21.11, to be 'sexually violent offenses.' Texas Code of Criminal Procedure § 62.016 The only possible ground for classifying Creekmore as a 'person convicted of a sexually violent offense' would require a finding that he was convicted of

7

UCMJ offenses the elements for which are substantially similar to the elements of offenses proscribed by §§ 22.011 ('Sexual Assault') and 21.11 ('Indecency With A Child') of the Texas Penal Code.  For the reasons argued immediately above, it is clear that Creekmore has neither been convicted of §§ 22.011 or 21.11, nor has he ever been convicted of any offense the elements of which are substantially similar to §§ 22.011 or 21.11.  It is, therefore, both factually and legally inaccurate to classify Creekmore as 'a person convicted of a sexually violent offense.'

### 3.  Inaccurate To Classify Creekmore as being 'convicted of multiple sexually violent offenses.'

Creekmore has been classified a 'person who has been convicted of two or more sexually violent offenses.'  For the reasons argued more fully above, it is inaccurate to classify Creekmore as having received even a single conviction for any sexually violent offense, let alone multiple convictions for such offenses.

Additionally, this Court has already held that Creekmore can only be considered to have a single conviction: where he was convicted of a Charge of Indecent Assault, with one specification, and of a Charge of Indecent Acts with a Child, with four Specifications; where the two Charges were brought in one General Court Martial, before one military judge, in one case and at the same time; and where he received and served one sentence.

For these reasons, it is both factually and legally inaccurate to classify Creekmore as 'person who has been convicted of two or more sexually violent offenses.'

### B.  Rights Infringed By The Misapplication Of SORP

### 1.  The SORP Affect Upon Rights, Generally

The manner in which SORP's registration and notice provisions have been applied to Creekmore is based upon the false classifications of him as a sex offender with a Reportable Conviction, as a person convicted of a sexually violent offense, and as a person with two or more convictions for sexually violent offenses. The determination that SORP should be applied against Creekmore on the basis of these false classifications has not only subjected Creekmore to SORP's registration and notification requirements, but has also infringed upon other cognizable rights held by him.

2. Deprivation Of Right To Sue For 'Libel.'

Because of the inaccurate sex offender classifications, Creekmore was compelled to register as a sex offender against his will. Under SORP's automatic notification provisions, the Texas Department of Public Safety then posted untrue and misleading information about Creekmore which falsely indicates that he is a sex offender with a reportable conviction, and that he has been convicted two or more times of a violent sexual crime. Creekmore, however, lost the right to sue Texas officials for these misrepresentations because SORP purports to grant immunity to such officials for the release of information regarding a person required to register as a sex offender. Tex. Code Crim. Proc. §§ 62.09 and 62.091. This grant of immunity effectively deprives Creekmore of a common law right under which a person libeled by a public official may sue the official for damages in a court of competent jurisdiction. *Oden v. Reader*, 935 S.W.2d 470 (Tex.App. – Tyler 1996). This purported immunity also effectively deprives Creekmore of a right specifically protected by the Texas Constitution, which provides that "All courts shall be open, and every person for an injury done him, in his …reputation, shall have remedy by due course of law." Tex. Const. Art. I, § 13.

9

### 3. Impairment Of Liberty Interest Through Automatic Occupational Debarment.

The Supreme Court has recognized that people have a liberty interest in pursuing various occupations, should they so choose. When Creekmore was compelled to register as a sex offender against his will because of the inaccurate sex offender classifications, he was legally and automatically debarred from entering certain professions. Tex. Educ. Code § 21.058 (Occupational debarment of teachers), Tex. Occ. Code § 164.057 (Occupational debarment of physicians). The false sexual offender classifications made about Creekmore and the consequential misapplication of SORP against him, have therefore impinged upon a cognizable liberty interest by preventing him from entering certain occupations should he so choose.

### 4. Deprivation Of Welfare Benefits Through Ban From Federally Subsidized Housing,

Because Creekmore has been misclassified as having committed two or more sexually violent offenses, he is now subject to a lifetime registration requirement under SORP. This lifetime registration requirement, without nothing more, automatically triggers a permanent bar which will forever prevent Creekmore from ever gaining admission into any federally assisted housing. 42 U.S.C. § 13663(a). This permanent bar is not limited to Public Housing, but includes privately owned complexes which receive project-based subsidies under Section 8, tenant-based housing subsidies through the Section 8 Voucher Program, federally subsidized housing for the elderly, federally subsidized housing for the disabled, and other programs as well. 42 U.S.C. § 13664(a)(2). The subsidized rent provided under these programs constitutes a type of welfare benefit.

The federal Public Housing Program and the Section 8 Voucher Program are managed on the local level by Public Housing Authorities ("PHAs"). PHAs constitute units of state government, Tex. Local Gov't Code § 392.006. Applicable federal statutes and HUD regulations require PHAs to adopt policies in their local administration of these subsidized programs which incorporate the permanent federal ban against people who have a life-time obligation to register as sex offenders. Consequently, every PHA in compliance with the applicable federal statutes and regulations will have adopted policies under which Creekmore will automatically be excluded from federally subsidized housing.

But for being subjected to life-time registration under SORP, Creekmore (who has already been adjudged by this Court to be a pauper) would meet the income guidelines to qualify for entry into some of these subsidized housing programs. An individual qualifies for federally subsidized "housing because he or she cannot afford housing at prevailing market rates." *Stoltz v. Brattleboro Housing Authority*, 315 F.3d 80, 90 (2nd Cir. 2002). Despite this general qualification to receive this type of welfare benefit from local units of State government, Creekmore is forever banned from every enjoying such benefits because he has falsely been classified as a person who has multiple convictions for sexually violent offenses.

5. Impairment Of The Right To Travel.

The Constitution provides for a right to travel which allows citizens to travel and to move wherever and whenever they want. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322 (1969). American citizens have the constitutional right "to be free to travel within and between the states, unihibited by statutes and regulations which unreasonably burden this movement." *Johnson v. City of Opelousas*, 658 F.2d 1065, 1972 (5th Cir. 1981).

11

Because of SORP's registration provisions, Creekmore is required to meet additional hurdles in his exercise of these constitutional rights. For instance, Creekmore must report, in-person, to a law enforcement office whenever he makes two-day visits to an area more three times in a month. He must also report, in-person, to a law enforcement office immediately upon changing his residence. Although the Defendants may characterize these as "minor restriction," they are restrictions nonetheless, and freedom of movement is a fundamental right which may be restricted only where necessary to further the most compelling state interest. *Fayle v. Governor of Guam*, 414 F.Supp. 636, 639 (D. Guam 1976).

By being falsely classified as a sex offender with a reportable conviction, Creekmore lost the right to travel, to move and to visit without making in-person reports to the authorities. Creekmore's exercise his constitutional right to travel and to move has clearly been burdened by these additional hurdles. The misapplication of SORP against Creekmore has therefore impaired his constitutional right to travel.


6. Right To Be Free Of Restraints And Seizures.

Because Creekmore has been misclassified as a sex offender with two or more convictions of a sexually violent offense, he is now required, every ninety days for the rest of his life, to make in-person visits to a local law enforcement office to register as a sex offender, and to provide a wide variety of information and evidence, including but not limited to, his fingerprints, his shoe size, a recent picture, his social security number, and much, much more. He is also required to make additional in-person reports upon the occurrence of certain events, such as when he makes two-day visits to an area three or more times in a month.

12

The letter dated January 24, 2000, from the Jefferson County Sheriff's Office threatened that if Creekmore failed to comply with these registration provisions, he would face severe criminal sanctions. The demand and threat contained within this letter constitutes a show of authority. Creekmore complied with this show of authority by making the in-person visits to local police stations to provide the information requested of him. He has done so, however, unwillingly and under protest.

Each time that Creekmore submits to this show of authority by unwillingly makes a visit to a local police station in order to give his fingerprints and to update other information, there has been a 'seizure' for purposes of the Fourth Amendment. *Hays v. Florida*, 470 U.S. 811, __, 105 S.Ct. 1643, ___ (1985), and *Terry v. Ohio*, 392 U.S. 1 (1968). These seizures are unreasonable because they are premised upon the false classification of Creekmore as a sex offender with repeated convictions for sexually violent offenses.

Each visit to a police station which Creekmore is compeled to make pursuant to SORP's registration provisions also constitutes a restraint upon a liberty interest. American citizens have a liberty interest in the right of movement. The Supreme Court has "expressly identified this 'right to remove from one place to another according to inclination' as 'an attribute of personal liberty' protected by the Constitution. [Cites omitted.] Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage" [Cites omitted.], or the right to move 'to whatsoever place one's own inclination may direct' identified in Blackstone's Commentaries." *Chicago v. Morales*, 527 U.S. 41, 53-54, 119 S. Ct. 1849, 1857-58 (1999)(finding a liberty interest in loitering). Conversely, Creekmore contends that in the exercise of this liberty interest, he has the choice to visit or to not visit local police stations, as he

sees fit. Creekmore, however, has been unreasonably restrained in his exercise of this liberty interest by the imposition of SORP's registration provisions against. Creekmore contends that forcing him to make in-person visits to local police stations is unreasonable because his UCMJ conviction does not meet SORP's statutory definition of a Reportable Conviction.

7. Right To Proper Classification.

SORP requires that certain classifications be made not only to determine if a person is subject to SORP's registration and notification provisions, but also to determine the extent, if any, to which a person must comply with those provisions. People who classified as having a reportable conviction are required to register annually for ten years; those who are classified as having been convicted of a sexually violent offense are required to register annually for life; and those classified as having been convicted of two or more sexually violent offenses must register every ninety days for the rest of their lives. People who do not fit within any of these three classifications are not required to register under SORP at all.

Because "...no man should be compelled to do what the laws do not require...", *Warren v. United States Parole Commission*, 659 F.2d 183, 188 (D.C. Cir. 1981), Creekmore should not be compelled to register under SORP unless it is determined that he meets the statutory classification of a person with a Reportable Conviction, or a person convicted of a sexually violent offense, or person with two or more convictions for sexually violent offenses. Absent such a determination, Creekmore has the statutory right not to register under SORP. Moreover, Creekmore has a liberty interest in not being misclassified without appropriate procedures to prove that he actually meets the statutory classifications which would require him to register under SORP as a sex offender. *Foucha v. Louisiana*, 504 U.S. 71, 78-79, 112 S. Ct. 1780, 1784-

14

85 (1992)(a convicted felon serving his sentence has a liberty interest, not extinguished by his confinement as a criminal, in not being … classified as mentally ill without appropriate procedures to prove that he was mentally ill.").

Although Creekmore does meet any of the statutory classifications which would require him to register as a sex offender under SORP (as has been argued more fully above), the Defendants nevertheless determined to classify him as having a reportable conviction, and as having been convicted two or more times of a violent sexual offense. The Defendants made this wrongful determination on an ex parte basis without any appropriate procedure to determine that such classifications actually applied to Creekmore. This false classification of Creekmore without the use of any appropriate procedures not only deprived Creekmore of his right not to register under SORP, but also infringed upon a liberty interest.

8.  Infringement Of Liberty Interest By Damage To Reputation.

Under SORP's automatic notification provisions, the Texas Department of Public Safety posts information concerning registered sex offenders on a web site which is open and available for perusal by anyone on the World Wide Web. This web site not only portrays Creekmore as a sex offender who must register under SORP, but also portrays him as someone who must register every ninety days. This information essentially gives notice to the public that Creekmore has been found to be a sex offender with a reportable conviction under SORP, and that he has also been found to have been convicted of two or more sexually violent offenses. *Wisconsin v. Constantineau*, 400 U.S. 433, 436, 91 S. Ct. 507, 509 (1971). It is untrue, however, that Creekmore has been convicted of tow or more sexually violent offenses, as has already been

found by this Court.  It is also false that Creekmore's UCMJ conviction meets SORP's definition of a Reportable Conviction.

This posted information is not only false, but stigmatizing.  To be stigmatizing, a statement must assert false factual representations by a state actor of wrongdoing on the part of the plaintiff. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991).  The statement "must be worse than merely adverse; it must be such as would give rise to a 'badge of infamy,' public scorn, or the like." *Wells v. Hico ISD*, 736 F.2d 697, 701 (5th Cir. 1984).

A statement that someone is a sex offender, or a violent sex offender is plainly a badge of infamy, and clearly alleges wrongdoing on that person's part.  Creekmore suffers the infamy associated with being falsely, consciously and publicly labed in a derogatory manner by Texas as a 'sex offender' and as a 'sexually violent sex offender,' leading to serious public ignominy

However, reputation alone, apart from some more tangible interest, is not 'liberty' or property,' by itself sufficient to invoke the procedural protections of the Due Process Clause." *Paul v. Davis,*  424 U.S. 693, 701 (1976).  Rather, in addition to showing that the government is stigmatizing plaintiff's reputation, the plaintiff must also show that the defamation would, with some degree of certainty, lead to the loss of, or injury to, a more tangible interest.  *Marrero v. City of Hialeah*, 625 F.2d 499, 513019 (5th Cir. 1980).  In other words, it takes "stigma plus infringement" – harm to reputation in addition to some other impediment, to establish a constitutional deprivation of a protected liberty interest that calls for due process.

## C.  Procedural Due Process Claims

### 1.  Generally.

Creekmore was falsely labeled as a sex offender with a reportable conviction, and also a sex offender who has been convicted two or more times for sexually violent offenses. The determination to label Creekmore with these falsehoods is the sole basis for requiring Creekmore to comply with SORP's registration and notification requirements. Because the determination to label Creekmore with these falsehoods was made without any type of hearing whatsoever, Creekmore was denied a timely opportunity to prove the falsity of these labels. Creekmore contends that his due process rights were violated when these false labels upon him without any type of hearing.

The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). This Clause has both a procedural and a substantive component. The overriding concern of the procedural component is the "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901-05. "When protected interests are implicated, the right to some kind of prior hearing is paramount" *Id.*

2.  The Decision To Falsely Label Creekmore implicated Constitutionally Protected Rights.

SORP's registration and notification provisions were wrongfully foisted upon Creekmore solely because he has been falsely labeled as a sex offender with multiple convictions for violent sexual offenses. As has been argued more fully above, this led to the impairment of various fundamental rights and liberty interests held by Creekmore, including, among other things: (1) The fundament right to seek legal redress against the Texas Officials who have libeled him; (2) The liberty interest in working in various fields of employment, for which he has now been

17

occupationally debarred (3)  the right to ever obtain a government welfare benefit (federally subsidized housing) for which he is otherwise qualified to receive;  (4) the constitutional right to move and to travel without reporting to local law enforcement;  (5) the right to be free of unreasonable restraints and seizures; (6) the statutory right, which is also a liberty interest, in being properly classified under SORP; and (7) the liberty interest in not being stigmatized by falsehoods which also infringe upon other protected rights.  The impairment of these protected rights and liberty interests was the necessary and foreseeable result of falsely labeling Creekmore as a sex offender with multiple convictions for violent sexual offenses.

### 3.  The Due Process Hearing Must Be Held Before SORP Is Determined To Apply.

"*Before* a person is deprived of a protected interest, he must be afforded an opportunity for some kind of a hearing, 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event" [Emphasis added]. *Boddie v. Connecticut, 401 U.S. 371, 379*" "[I]t is fundamental that except in emergency situations, due process requires that when a State seeks to terminate [a protected] interest . . . , it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective. " *Bell v. Burson,* 402 U.S. 535, 542."

Although due process generally requires the state to provide notice and hearing prior to the deprivation of a protected interest, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 1493 (1985), there are some limited exceptions in the case of emergency, *Bell*, 402 U.S. at 542, and in the case of "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.". *Boddie*, 401 U.S. at 379. For instance, the *Parratt/Hudson* doctrine allows a postdeprivation process to be constitutionally

18

adequate in certain limited situations. In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981)(a prisoner's hobby kit was lost through the random, unauthorized, negligent conduct of a prison guard in Nebraska), the Court recognized that the State could not possibly have given prior notice and hearing of an accidental deprivation because the State could not possibly have foreseen that the deprivation would occur. The Court held that by maintaining a post-deprivation procedure through which the prisoner would have been adequately compensated for his property had he prevailed, the State had provided all of the process it could be expected to provide, so that the State could not, therefore, be held liable for failing to provide pre-deprivation process. 451 U.S. at 544, 101 S.Ct. at 1917. The *Parratt* exception to the requirement of predeprivation notice and hearing was expanded in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194 (1984), to include deprivations caused by the random and unauthorized intentional acts of misconduct by state actors, but only if the state provided adequate postdeprivation remedies. In so holding, the Court found that "[t]he state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct." 468 U.S. at 534, 104 S.Ct. at 3203.

In *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975 (1990), the Court emphasized that *Parratt* and *Hudson* are narrow exceptions which only apply where a deprivation is caused by a random and unauthorized act which cannot be foreseen by the State. *Zinermon*, 494 U.S. at 128-30, 110 S.Ct. at 984-86. The Court expressly found that *Parratt* and *Hudson* do not apply when the deprivation is caused by conduct which is authorized by local practice, regardless of whether that authorized conduct is prohibited by state law. *Zinermon*, 494 U.S. at 138, 110 S.Ct. at 990. The Court also held that *Parratt* and *Hudson* do not apply to deprivations which are foreseeable and predictable, and which occur at a foreseeable and predictable time in the state's procedures. *Zinermon*, 494 U.S. at 136, 110 S.Ct. at 989 The Court further held that *Parratt* and *Hudson* do not

apply in cases in which it was practicable for the state to implement some procedure which could reasonably be expected to prevent the occurrence of that particular type of unlawful deprivation. *Zinermon*, 494 U.S. at 136-37, 110 S.Ct. at 989-90.

It is difficult to see how the mischaracterization of Creekmore as a violent sex offender fits within any exception which would allow the state to postpone a due process hearing until after Creekmore had already been deprived of his protected rights. The decision to label Creekmore was not the result of any emergency. Nor was the decision to classify Creekmore for purposes of SORP in any way 'unforeseeable' nor 'unpredictable.' To the contrary, the determination to label Creekmore as a violent sex offender was merely a routine administrative decision. This routine administrative decision should only have been made after a due process hearing which provided Creekmore the opportunity to prove the falsity of the labels which have now been applied against him.

The actual procedures used by the State of Texas to label Creekmore as a repeat violent sex offender are apparently the same procedures used to classify Mendoza-Martinez, a natural born American, as a non-citizen after he pleaded guilty to and was sentenced for the offense of draft evasion. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554 (1963). Mendoza-Martinez, a natural US citizen, left the United States in 1942, and fled to Mexico to avoid the draft. In 1944, the Nationality Act of 1940 was amended to include §§ 401(j) and 349 (a)(10), which purported to automatically strip, without any judicial or administrative hearing, an American citizen of his citizenship whenever that "citizen departs from or remains outside the jurisdiction of this country for the purpose of evading his military obligations." *Id.*, 372 U.S. at 147, 83 S.Ct. at 556. Mendoza-Martinez returned in 1946, and in 1947, was indicted for draft evasion in violation of the Selective Training and Service Act of 1940. Mendoza-Martinez

pleaded guilty to draft evasion and was sentenced to prison for on one year and one day.  The

Indictment against Mendoza-Martinez read, in part, that:

> "…the defendant did knowingly evade service in the land or naval forces of the
> United States of America in that he did knowingly depart from the United States and go
> to a foreign country, namely: Mexico, for the purpose of evading service in the land or
> naval forces of the United States and did there remain until on or about November 1,
> 1946." *Id.*, n. 7, 372 U.S. at 157, 83 S.Ct. at 561.

The judgment and commitment similarly found that Mendoza-Martinez was convicted of:

> "Having on or about November 15[th] 1942, knowingly departed from the United
> States to Mexico, for the purpose of evading service in the land or naval forces of the
> United States and having remained there until on or about November 1[st] 1946."

The government subsequently applied §§ 401(j) and 349 (a)(10) against Mendoza-

Martinez without according him any hearing, and reclassified him as a 'non-citizen.'  The

statutory schema underlying §§ 401(j) and 349 (a)(10) provided for such an automatic

reclassification whenever the statutory set of facts developed.  The Government argued that the

availability after the fact of administrative and judicial proceedings met the measure of due

process.

In 1953, Mendoza-Martinez was served with a warrant of arrest in deportation

proceedings.  The government argued that by remaining outside the United States to avoid

military service after September 27, 1944, when § 401 (j) took effect, Mendoza-Martinez was

automatically stripped of his American citizenship.  Mendoza-Martinez was ordered departed,

and he filed suit for declaratory relief.

The Supreme Court held that Mendoza-Martinez' conviction for draft evasion did not

support a finding for violations under §§ 401 and 349 because these sections required proof of

additional facts not required to convict Mendoza-Martinez for draft evasion.  It made this ruling

based entirely upon the elements of the offenses and without reference to the underlying facts of

the convicton for draft evasion which were clearly set out in the indictment, the judgment and the commitment. Moreover, the court held that the procedure followed by the state in reclassify Mendoza-Martinez was constitutionally infirm for failing to provide Mendoza-Martinez the requisite procedural protections.

"Even if the incidence of conviction for draft evasion were potentially relevant to the validity of § § 401 (j) and 349 (a)(10), the fact is that the 'crime' created by these sections includes an element not necessary to conviction for violation of § 11 of the Selective Training and Service Act of 1940 – 'departing from or remaining outside' the country 'for the purpose of evading or avoiding [military] training and service . . . .' [Cites omitted.] Mendoza-Martinez was thus never tried for any crime the elements of which are identical with or totally inclusory of those of § 401 (j), and hence was not even arguably accorded the procedural protections we here hold essential." *Id.*, 372 U.S. at 167, 83 S.Ct. at 567.

4. Violation Of Creekmore's Procedural Due Process Rights.

There is no question but that SORP did not provide Creekmore with any process by which he could have challenged the determinations under SORP. This Honorable Court has already recognized that "Texas specifies no process whatsoever" for military offenders, and that "the Texas scheme for dealing with military convicts is flawed and represents a constitutional due process miscarriage waiting to happen." In short, there is no real question that SORP has unconstitutionally violated Creekmore's procedural due process rights.

D. Substantive Due Process Claims

1. Generally

22

The "Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, ___ (1990). This substantive component "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301-02, 113 S. Ct. 1439, 1447 (1993). A "substantive due process" analysis must therefore begin with a careful description of the asserted liberty or property right, and then determine whether the claimed right constitutes a 'fundamental interest.' *Id.* If so, then the analysis must proceed to determine whether the infringement of those protected rights is narrowly tailored to serve a compelling state interest. *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 117 S. Ct. 2302 (1997).

2.  Protected Interests Infringed By SORP.

As has been argued more fully above, SORP was applied against Creekmore after he was falsely labeled as a sex offender with two or more convictions for violent sexual offenses. SORP's registration and notification provisions has impaired protected rights which have been listed more fully above. This misapplication of SORP against Creekmore has impaired certain of his fundamental interests, including the right to travel, the right to seek judicial redress for libel, the right to be free of unreasonable restraints and seizures, and the right to avoid any stigma to his reputation which is attended by the impairment of other protected rights.

3.  The Application Of SORP To Creekmore Is Unwarranted, Unreasonable And Frivolous.

Creekmore is currently being required to comply with SORP's registration and notification requirements as though he is a sex offender with a Reportable Conviction, as though he is a sex offender convicted of a violent sexual offense, and as though he is a sex offender convicted two or more times of violent sexual offenses. Creekmore's single conviction under the UCMJ provides the only basis for applying SORP against him in such a manner. But applying SORP against Creekmore merely on the basis of his UCMJ conviction is unwarranted because, as has been argued more fully above, that UCMJ conviction does not meet the statutory definition of a 'Reportable Offense,' nor does it meet the statutory definition of a 'violent sexual offense,' nor can that single UCMJ conviction properly be construed to constitute 'two or more convictions' for SORP's purposes. The application of SORP against Creekmore is also unreasonable because "…no man should be compelled to do what the laws do not require…", *Warren*, 659 F.2d at 188. Finally, the state's determination that SORP should be applied against Creekmore is frivolous because this determination was clearly made without reference to SORP's statutory definitions.

### 4. No Compelling State Interest.

The state has no compelling in the applying SORP in an unwarranted, unreasonable and arbitrary manner. To the contrary, the substantive component of the Due Process Clause is intended to bar such arbitrary, wrongful governement actions regardless of the fairness of the procedures used to implement them. *Foucha*, 504 U.S. at ____; 112 S. Ct. at ____.

### 5. Violation Of Creekmore's Substantive Due Process Rights.

Creekmore has neither been convicted of any offense which counts as a reportable conviction, nor has he been convicted two or more times of any violent sexual offenses. Although the state had no compelling interest in applying SORP against of Creekmore as though he was a repeated violent sexual offender, it nevertheless did so and thereby infringed upon certain of Creekmore's fundamental rights.  Such conduct violates the substantive component of the Due Process Clause.

### E.  Equal Protection Claims

In Texas, people who have convictions for crimes which meet SORP's statutory definition of a 'reportable conviction' are required to comply with SORP's registration and notification procedures.  Anyone who also meets SORP's classification as a person convicted two or more times of a violent sexual offense is further required to comply with heightened registration requirements under SORP.

In contrast, people with convictions for crimes which do not fall within SORP's definition of a 'reportable conviction' are not required to register as sex offenders under SORP unless some foreign jurisdiction has ordered them to do so.  Nor is anyone who does not meet SORP's classification as a person convicted two or more times of a violent sexual offense required to comply with any heightened registration requirements under SORP.

Creekmore's single conviction for the UCMJ offenses of "Indecent Assault" and "Indecent Acts With A Child" does not meet SORP's definition of a reportable conviction, nor does that single UCMJ conviction constitute multiple convictions for violent sexual offenses. The state, however, has applied SORP against Creekmore as though is a sex offender with a reportable conviction and with two or more convictions for violent sexual offenses.

In short, the state is applying SORP against people with certain UCMJ offenses in a manner differently than it applies SORP other people whose convictions are not reportable convictions under SORP. As has been argued more fully above, this applicaton of SORP against Creekmore on account of his UCMJ conviction is unwarranted, unreasonable and frivolous. The state simply has no rational basis for treating Creekmore's UCMJ conviction differently than it treats convictions for other people. Creekmore contends that this unwarranted, unreasonable and frivolous application of SORP to his UCMJ conviction has not only infringed upon legally cognizable rights, but violates the Equal Protection Clause under the Fourteenth Amendment.

## F. Claims Arising From SORP's Punitive Nature

### 1. SORP Is Punitive.

Creekmore does not contend that the Texas Legislature intended SORP to be punitive. Instead, he contends that SORP is punitive in effect, regardless of the Legislature's intent. The factors used to test for a statutes punitive effect are set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. at 168-68, 83 S.Ct. at 567-68.

Although the Texas Court of Criminal Appeals has already applied the Kennedy factors to hold that SORP was not punitive, the court expressly limited that holding to the 1997 Amendments to SORP and expressly declined to rule on the 1999 Amendments. *Rodriquez v. State*, 93 S.W.3d 60, 79 (Tex.Crim.App. 2002). In light of subsequent case law, *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140 (2003), reversing *Doe v. Otte*, 259 F.3d 979 (9th Cir. 2001), *Espindola v. Florida*, 855 So. 2d 1281 (Fla. Dist. Ct. App. 3d Dist. 2003), Creekmore contends that SORP is punitive in effect and should be so found by this court.

SORP is punitive under the Kennedy factor which tests for the imposition of affirmative disability or restraint. Under this factor, SORP is punitive, as it is being applied against Creekmore, because a sex offender registration program is punitive if it requires the registrant to make periodic, in-person visits to local law enforcement offices every 90 days. *Doe v. Otte*, 259 F.3d 979 (9th Cir. 2001) *rev'd by* 538 U.S. 84, 123 S.Ct. 1140 (2003)(this particular finding was reversed when the Supreme Court found that the quarterly visits did not have to be made in person). In commenting on this particular finding, the *Rodriguez* court distinguished SORP on grounds that most registrant's need only make in-person visits annually as opposed to quarterly, and the court declined to make any ruling as to the quarterly in-person visits which SORP requires of repeat violent sexual offenders. *Id.*, at 93 S.W.3d at 70.

SORP's notification provisions are also impose an affirmative disability in that they are not limited to the passive posting of stigmatizing information on the internet, but also require more active forms of notification as well. *Espindola*, 855 So. 2d. at ___. "Thus, the "stigma" here not only from an offender's conviction but also comes from the active dissemination of this conviction and other information by law enforcement." Id.

Furthermore, SORP is punitive under the Kennedy factor for excessiveness. The dissemination of false and misleading information about Creekmore is unnecessary to achieve SORP's otherwise laudable aim of warning the community about the presence of dangerous sex offenders. SORP is also excessive because there is no reasonable basis for warning the public of Creekmore's presence as an alleged dangerous sex offender because Creekmore does not meet SORP's definition of such offenders for whom such a warning is warranted. Any benefit the public may receive from such warnings, is greatly outweighed by the stigma which they inflict upon Creekmore by publicly and falsely branding him as a dangerous sex offender.

2. Ex Post Facto.

It is undeniable that after Creekmore was convicted under the UCMJ in 1996, SORP was amended in 1997 to include UCMJ convictions. The retroactive application of SORP to Creekmore's UCMJ conviction will violate the Ex Post Facto Clause if, and only if, SORP is found to be punitive in either intent or effect. *Smith*, 538 U.S. at 177, 123 S.Ct. at 1147.

For the reasons argued above, the manner in which SORP has been applied to Creekmore is punitive in effect, so that SORP impermissibly violates the Ex Post Facto Clause.

3. Double Jeopardy

The elements of the UCMJ offenses for which Creekmore was convicted do not contain all of the elements which would have been needed to convict Creekmore of an offense under the Texas Penal Code which could support a reportable conviction. By classifying Creekmore as a dangerous sexual offender, the state has clearly filled in those missing elements by relying upon the facts underlying Creekmore's UCMJ conviction. In short, the underlying facts have been reassessed in order to find Creekmore constructively subject to SORP's registration and notification procedures. This effectively constitutes a re-trial of the offenses for which Creekmore has already been convicted, and the sole purpose of this retrial is to subject Creekmore to SORP's registration and notification provisions, which (as has been argued above) are punitive as applied to Creekmore. This clearly violates the Constitutional prohibition against double jeopardy.

## V.  CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Meredith Trent Creekmore prays

that this Honorable Court render summary judgment in his favor and:

(A)  Declare that the Texas Sex Offender Registration Program, Chapter 62 of the

Texas Code of Criminal Procedure, violates Plaintiff's Constitutional rights, and that

Plaintiff is not required to register under that Act;

(B)  Enjoin the Defendants from enforcing the Texas Sex Offender Registration

Program, Chapter 62 of the Texas Code of Criminal Procedure, against Plintiff, and from

taking any action authorized or required by that Program with respect to Plaintiff;

(C)  Order Defendants to remove Plaintiff's name from any database or lis of sex

offenders maintained by them;

(D)  Award Plaintiff his costs of suit; and

(e)  Award Plaintiff such other and further relief to which he may be entitled.

Respectfully submitted,

_Mark J. Grandich_  by
Mark J. Grandich
State Bar No. 08294850

Lone Star Legal Aid
1415 Fannin, Third Floor
Houston, Texas 77002
(713) 982-1982
Fax (713) 652-3814
mgrandich@lonestarlegal.org

Attorney-In-Charge For Defendant

29

Shimon Kaplan
State Bar No. 11095020
Lone Star Legal Aid
P.O. Box 2552
Beaumont, TX 77704
(409) 835-4971
(409) 839-8182 FAX

Co-Counsel For Defendant

## CERTIFICATE OF SERVICE

I, Mark J. Grandich, certify that on the 16th day of January, 2004, a true and correct copy of the foregoing Plaintiff's Response To Defendants' Motions For Summary Judgment was sent by certified first class mail, return receipt requested, to the following attorneys-in-charge:

Mr. Robert B. Maddox
Assistant Attorney General
P.O. Box 12548
Austin, TX 78711-2548
(Counsel for Defendant Attorney General of the State of Texas, and for Defendant Director of the Texas Department of Public Safety)

Mr. Richard Baker
Assistant Criminal District Attorney
P.O. Box 2553
Beaumont, TX 77704
(Counsel for Defendant Sheriff of Jefferson County)

Mr. Dean J. Johnson
Police Legal Advisor
P.O. Box 3827
Beaumont, TX 77704
(Counsel for Defendant Chief of Police of the City of Beaumont)

*Mark J. Grandich  By*

MARK J. GRANDICH